## THE BANK OF COMMERCE vs. THE UNION BANK.

The drawee of a bill of exchange, it seems, is presumed to know the hand-writing of the drawer.

And the payment of a bill by the drawee is ordinarily an admission of the drawer's signature, which he is not afterwards, in a controversy between himself and the holder, at liberty to dispute.

And therefore if the drawer's signature is on a subsequent day discovered to be a forgery, the drawee can not compel the holder, to whom he has paid the bill, to restore the money, unless the holder be in some way implicated in the fraud.

But the reason of the rule fails, and the rule itself does not apply, where the forgery is not in counterfeiting the name of the drawer, but in altering the body of the bill.

A bank in New Orleans drew a bill at sight upon the plaintiffs' bank in New-York for $105, payable to "J. Durand." After it was issued the bill was fraudulently altered to a bill for $1005, payable to " J. Bonnet," and indorsed with that name. The plaintiffs, at sight, paid the bill to the defendants' bank in New-York, which had received it for collection from a bank in Charleston. *Held,* that the plaintiffs, on ascertaining the forgery, were entitled to recover back the money, the jury having found that they were not guilty of any negligence in not discovering the forgery before paying the bill, and notice of the forgery having been given as soon as discovered.

Money paid by one party to another, through a mutual mistake of facts in respect to which both were equally bound to inquire, may be recovered back.

THE Bank of Commerce brought assumpsit in the superior court of the city of New-York, against the Union Bank, to recover money paid by mistake. On the trial before SANFORD, J. the case was this:

On the 18th of December, 1847, the New Orleans Canal and Banking Company drew a draft on the Bank of Commerce in

New-York, payable to the order of "J. Durand," for one *hundred* and five dollars. After the draft was issued it was fraudulently altered in several respects, and among others, by the substitution of the word "thousand" for "hundred," and the name "Bonnet" instead of "Durand," so that it appeared to be a draft for one thousand and five (instead of one hundred and five) dollars, and payable to the order of J. Bonnet (instead of J. Durand.) In this altered condition, and bearing the indorsement "J. Bonnet," the Union Bank in New-York received the draft from the State Bank of Charleston for collection, and credited the amount to that bank. The Bank of Commerce, on the draft being presented by the Union Bank, paid it to the latter. Two days afterwards the Bank of Commerce received advices from the New Orleans Canal and Banking Company, and then ascertained the alterations in the draft. Thereupon the draft was returned to the Union Bank, and the money, which had been paid, demanded; but payment was refused.

The evidence being closed, the court charged the jury that if they were satisfied the draft had been altered, in the manner before mentioned, after it was issued by the drawers, and that the plaintiffs paid the amount of it, as altered by, mistake, and without knowledge of or reason to suspect the alterations, they were entitled to recover the amount of money so paid. Also that the rule requiring a banker to know the hand-writing of his customer, as to the signature to a check or draft, did not extend to the filling up of the body thereof; and that paying the draft in question under the circumstances was not of itself evidence of any negligence or want of due caution on the part of the plaintiffs. There was an exception to the charge and to the refusal of the court to charge certain propositions as requested. The plaintiffs had a verdict for $1035,38, which the superior court refused to set aside, and after judgment the defendants appealed to this court.

*H. Ketchum,* for appellants. I. There is no rule that the banker must know the hand-writing of his customer as to the signature, but the rule is "that the banker shall take care that

he do not pay away his customer's money without sufficient authority for the purpose; and if paid to a forged order, he must bear the loss, and it is immaterial whether the order was forged wholly or in part. It is the banker's duty to see that the check is genuine in all respects. (*Hall* v. *Fuller,* 5 *Barn. & Cress.* 750, *referred to in note* (*a*); *Chitty on Bills,* 288, *ed. of* 1839; *see also Smith* v. *Mercer,* 6 *Taunt.* 75.) The attempt to establish the principle that a different degree of scrutiny is required in examining the body of a draft by the person on whom it is drawn, from that required in examining the signature of the drawer, is utterly fallacious and ought to be discountenanced.

II. The second proposition laid down in the second divison of the judge's charge, is "that paying the draft, under the circumstances, was not of itself evidence of any negligence or want of due caution on the part of the plaintiffs. This assumes that which it is the province of the jury to find. The jury were to judge of circumstances, and of negligence or no negligence. (*Price* v. *Neal,* 3 *Burr.* 1355.)

III. The court erred in refusing to charge the jury, as requested, that the drawee of a draft is bound, before accepting or paying the same, to know its genuineness, and it is negligence in him not to inform himself whether the draft is genuine or not; and if he accepts or pays it, (unless upon misrepresentation,) that is an admission of its genuineness, which concludes him. (*Price* v. *Neal,* 3 *Burr.* 1355; *Markle* v. *Hatfield,* 2 *John.* 462; *last paragraph in opinion of Kent, Ch. J.; Bass* v. *Cline,* 4 *Maule & Selwyn, opinion of Dampier, J. p.* 15; *Smith* v. *Mercer,* 6 *Taunt.* 75; *Story on Bills,* § 113; *U. S. Bank* v. *Bank of Georgia,* 10 *Wheat.* 333.)

IV. Even if there was no negligence on the part of the plaintiff—still, if there were none, (and no fraud) on the part of the defendants, there is no reason why one innocent party should suffer rather than the other, and the law therefore leaves the parties in the same condition in which it found them. (*Cases before cited, and Bank of Gloucester* v. *Salem Bank,* 17 *Mass.* 33.) If, when the defendants presented the draft in question for payment, they held it in good faith, and for a valuable con-

sideration ; or if the party from whom they received it so held it, when he passed it to them, and if upon such presentation the plaintiffs' bank paid the amount of it to them, without being induced to do so by any fraud, deceit, or untrue representation of the defendants, this action could not be maintained.

V. The only ground upon which the respondent claims a right to recover in this case, is that the amount of the altered draft was paid by mistake. That action can only be maintained where it is against conscience for the defendant to retain the money. Here there is no pretence that the appellants can not conscientiously retain the money, for they have paid out in good faith, and without fault, all that they claim of respondents. (*See rule laid down by Lord Mansfield in Price* v. *Neal, before cited ; Brisbane* v. *Dacres,* 5 *Taunt.* 142 ; *Moses* v. *Macfarlan,* 2 *Burr.* 1012.)

*B. D. Silliman,* for respondents. I. Money paid under mistake of facts, may be recovered back. (*Chit. on Cont. Am. ed. of* 1844, *p.* 626, *and cases cited in notes ; Chitty on Bills, Am. ed. of* 1849, *p.* 425 ; 2 *Smith's Lead. Cas. p.* 237, *Law Lib. vol.* 28, *new series, p.* 269, *and notes ; Potter* v. *Everett,* 2 *Hall,* 252 ; *Mowatt* v. *Wright,* 1 *Wend.* 355 ; *Burr* v. *Veeder,* 3 *id.* 412 ; *Waite* v. *Leggett,* 8 *Cowen,* 195 ; *Union Bank* v. *U. S. Branch Bank,* 3 *Mass.* 74 ; *Garland* v. *Salem Bank,* 9 *id.* 389 ; *Lazell* v. *Miller,* 15 *id.* 207.)

II. The Bank of Commerce paid the money through mistake of facts. The forged alterations in the amount of the draft being without their knowledge at the time they paid it, they are entitled to recover back the sum paid. The rule requiring a banker to know the signature of his customer to a check or draft, does not extend to the filling up of the body of the instrument. (*Chitty on Bills, ed. of* 1849, *p.* 245, *and cases cited ; Jones* v. *Ryde,* 5 *Taunt.* 488 ; *Bruce* v. *Bruce, id.* 495 ; *Merchants' Bank of New-York* v. *Exchange Bank of New Orleans,* 16 *Louis. Rep.* 457.) So where a party has procured payment of forged or altered paper without indorsing his name on it, yet he must pay back the money, although he may have

paid it over to the party of whom he was the agent. (*Fuller v. Smith*, 1 *C. & P.* 197; *S. C. Ryan & Moody*, 49; *Chitty on Bills, ed. of* 1849, *p.* 245.)

III. The party paying has a right to recover his money as well where the forgery is that of the indorser's name, as where it is an alteration of the amount for which the bill was drawn. In this case the draft was assignable only by the indorsement of Durand, in whose favor it was drawn. It lacks that indorsement, and no title therefore ever passed either to the Charleston Bank or to the Union Bank. (*Chitty on Bills, ed. of* 1849, *p.* 260, *and cases cited; Smith* v. *Chester*, 1 *Term Rep.* 654; *Dick et al.* v. *Leverich*, 11 *Louis. Rep.* 573; *Canal Bank* v. *Bank of Albany*, 1 *Hill*, 287; *Talbot* v. *Bank of Rochester*, 1 *id.* 295; *Coggill* v. *Am. Ex. Bank*, 1 *Comst.* 11.)

IV. There is an implied warranty in the transfer of every negotiable instrument that it is not forged— and the actual indorsement of this draft by the Union Bank, was an express averment, and a guarantee to the Bank of Commerce that it was not forged or altered. It was an assurance of its genuineness in every respect, save the signature of the drawer. (*Chitty on Bills, ed. of* 1849, *p.* 245; *Jones* v. *Ryde*, 5 *Taunt.* 488; *Wilkinson* v. *Johnson*, 3 *Barn. & Cress.* 428; *Herrick* v. *Whitney*, 15 *John.* 240; *Harris* v. *Bradley*, 7 *Yerg.* 310; *Story on Bills of Exch.* §§ 110, 235.)

RUGGLES, J. delivered the opinion of the court.

The payment of a bill of exchange by the drawee is ordinarily an admission of the drawer's signature, which he is not afterwards, in a controversy between himself and the holder, at liberty to dispute; and therefore if the drawer's signature is on a subsequent day discovered to be a forgery, the drawee can not compel the holder to whom he paid the bill, to restore the money, unless the holder be in some way implicated in the fraud. (*Price* v. *Neal*, 3 *Bur.* 1354.) This rule is founded on the supposed negligence of the drawee in failing by an examination of the signature, when the bill is presented, to detect the forgery and refuse payment. The drawee is supposed to know

the hand-writing of the drawer, who is usually his customer or correspondent. As between him, therefore, and an innocent holder, the payer, from this imputed negligence must bear the loss. In *Price* v. *Neal*, the plaintiff had paid to Neal the holder two bills of exchange, purporting to be drawn on him by Sutton, whose name was forged. On discovery of the forgery, Price brought his action against Neal, to recover back the money as paid by mistake. Lord Mansfield in delivering the opinion of the court in favor of the defendant, said, " it was incumbent upon the plaintiff to be satisfied that the bill drawn upon him, was the drawer's hand before he accepted or paid it, but it was not incumbent upon the defendant to inquire into it." " Whatever neglect there was, was on his side. It is a misfortune which has happened without the defendant's fault or neglect."

In *Wilkinson* v. *Lutwidge*, (1 *Srange*, 648,) Lord Chief Justice Pratt was of opinion that " acceptance was a sufficient acknowledgment of the drawer's hand-writing on the part of the acceptor, who must be supposed to know the hand of his own correspondent." So the acceptance of a bill whether general, or for honor, or supra protest, *after sight of the bill*, admits the genuineness of the signature of the drawer ; and consequently if the signature of the drawer turns out to be a forgery, the acceptance will nevertheless be binding and entitle a *bona fide* holder for value and without notice to recover thereon according to its tenor. (*Story on Bills*, § 262.)

But it is plain that the reason on which the above rule is founded does not apply to a case where the forgery is not in counterfeiting the name of the drawer, but in altering the body of the bill. There is no ground for presuming the body of the bill to be in the drawer's hand-writing, or in any hand-writing, known to the acceptor. In the present case, that part of the bill is in the hand-writing of one of the clerks in the office of the Canal and Banking Company in New Orleans. The signature was in the name and hand-writing of the cashier. The signature is genuine. The forgery was committed by altering the date, number, amount and payee's name. No case goes

the length of saying that the acceptor is presumed to know the hand-writing of the body of the bill, or that he is better able than the indorsers to detect an alteration in it.  The presumption that the drawee is acquainted with the drawer's signature, or able to ascertain whether it is genuine, is reasonable.  In most cases it is in conformity with the fact.  But to require the drawee to know the hand-writing of the residue of the bill, is unreasonable.  It would, in most cases, be requiring an impossibility.  Such a rule would be not only arbitrary and rigorous but unjust.  The drawee would undoubtedly be answerable for negligence in paying an altered bill, if the alteration were manifest on its face.  Whether it was so or not, in this case was properly submitted to the jury, who found that it was paid by mistake and without knowledge of, or reason to suspect the fraudulent alterations.  It would have been difficult to find otherwise upon the evidence, the bill having passed through the defendants' bank, and the Charleston bank without suspicion. If the forgery had been in the name of the drawer, it might not perhaps have been incumbent on those banks to scrutinize the bill, because they might have relied on the drawee's better knowledge of the hand; but the forgery being in the body of the bill the plaintiffs were not more in fault than the defendants.

The greater negligence in a case of this kind is chargeable on the party who received the bill from the perpetrator of the forgery.  So far as respects the genuineness of the bill each indorsee receives it on the credit of the previous indorsers; and it was the interest and duty, in the present case, of the Bank of Charleston, to satisfy itself that the bill was genuine, or that its immediate indorser was able to respond in case the bill should prove to be spurious.  The party who fraudulently passed the bill can not avoid his liability to refund on the pretence of delay in detecting the forgery, or in giving notice of it; and if reasonable diligence is exercised in giving notice after the forgery comes to light it is all that any of the parties can require. (*Canal Bank* v. *The Bank of Albany*, 1 *Hill*, 287, 292, 3.)

In *Smith* v. *Mercer*, (6 *Taunt*. 76,) in *Cocks* v. *Masterman*, (9 *Barn. & Cres.* 902,) and in *Price* v. *Neal*, (3 *Burr*.

Bank of Commerce *v.* Union Bank.

1354,) the plaintiffs who paid the forged bills, being chargeable with a knowledge of the signature of the drawer, (which was forged,) were held to have paid it negligently and without due caution and examination, and on that ground it was that the defendants to whom they paid the money were held not liable without immediate notice of the forgery. But in the present case, no such negligence is imputable to the plaintiffs, the plaintiffs being no more capable of detecting the forged alteration by inspection of the bill, than either of the other parties.

This action is not founded on the bill as an instrument containing the contract on which the suit is brought. The acceptor can never have recourse on the bill against the indorsers. But the plaintiffs' right of recovery rests on equitable grounds. In the *Canal Bank* v. *The Bank of Albany*, the principle was recognized that money paid by one party to another through mutual mistake of facts in respect to which both were equally bound to inquire, may be recovered back. The defendants here as in that case have obtained the money of the plaintiffs without right and on the exhibition of a forged title as genuine, the forgery being unknown to both parties. The defendants ought not in conscience to retain the money, because it does not belong to them; and for the further reason that the defendants and the previous indorsers have, each, on the same principle, their remedy over against the party to whom they respectively paid the money, until the wrongdoer is finally made to pay. If that party should be irresponsible, or if he can not be found, the loss ought to fall on the party who, without due caution, took the bill from him.

In cases where no negligence is imputable to the drawee in failing to detect the forgery, the want of notice within the ordinary time to charge the previous parties to the bill, is excused, provided notice of the forgery be given as soon as it is discovered.

Judgment affirmed.