## THE SUSQUEHANNA VALLEY BANK, RESPONDENT, *v.* JUSTUS PICKERING, APPELLANT.

*Money paid on a forged draft — when it cannot be recovered from an indorser.*

A draft for $1,200, purporting to be drawn by the cashier of a New Jersey bank, upon a New York bank, payable to the order of one Brown, was, on June 14, purchased by the plaintiff and the proceeds paid to Brown. The latter, who was unknown to plaintiff's officers was accompanied by the defendant, who, at plaintiff's request, indorsed the draft, though he received nothing for so doing. Brown had brought a letter of introduction to the defendant, which proved to be a forgery. The draft had been altered by changing the name of the payee and raising its amount from twenty-five dollars to $1,200. The draft having been returned to the plaintiff, it sued the defendant to recover the amount paid on it.

*Held,* that as the defendant had received none of the money paid by the plaintiff, he was liable solely as an indorser, and that the necessary steps to charge him as such, not having been taken, the action could not be maintained. (BOCKES, J., dissenting.)

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action by the court, without a jury.

This action was commenced by the plaintiff against the defendant upon a certain draft or bill of exchange, of which the following is a copy :

"No. 17,215.

FIRST NATIONAL BANK. PLAINFIELD, N. J., JUNE 6th, 1877.

Pay to the order of WILLIAM BROWN, Twelve Hundred and no-100 dollars.

To the             CARMAN PARSE, CASHIER.

     FIRST NATIONAL BANK,

     $1,200.               NEW YORK."

*(left margin: $1,200. Twelve Hundred Dollars.)*

(Indorsed) "William Brown," "Justus Pickering." "Pay D. Palmer, cashier, or order, for collection account of Susquehanna Valley Bank, Binghamton, N. Y.

"J. W. MANIER."

The defendant, Justus Pickering, put his name upon the aforementioned draft or bill of exchange, under the following circumstances: On the 14th day of June, 1877, the payee, Brown, called upon the defendant Pickering and showed him a letter of introduction, purporting to have been written by a Mr. Conklin, of New York, to the defendant, introducing the said Brown to defendant. The Conklin mentioned in the letter was an acquaintance and business friend of defendant; the letter was subsequently found to be a forgery, but not until some four weeks after the transaction herein mentioned.

At the request of Brown, defendant went with him to the banking house of plaintiff; at the request of the cashier, Pickering put his name upon the back of the draft under the name of Brown. Manier, plaintiff's cashier, paid to Brown $1,200, and received the draft; Pickering received no portion of the money paid, and was in no manner benefited by the indorsement.

On the 15th day of June, 1877, the plaintiff forwarded the draft to their correspondent, the National City Bank of New York, for collection. On the morning of the 16th of June, 1877, the National City Bank presented the draft to the drawee, the First National Bank of New York, for payment, and upon such presentation the draft was paid and canceled.

The First National Bank of New York sent it on the 2d day of July, 1877, to the First National Bank of Plainfield, N. J., which

received it on July 3, 1877. On the ninth of July, it discovered that it was a draft issued by them on the 5th day of June, 1877, for the sum of twenty-five dollars, payable to the order of one William A. Palmer; that the date had been changed to the sixth of June; the words " twenty-five " had been erased and the words " twelve hundred " written in their place; the figures " $25 " had been erased and " $1,200 " inserted; the words " William A. Palmer " had been erased and " William Brown " written in their place.

On the tenth of July, the First National Bank of Plainfield, N. J., returned the draft to the drawee, and on the eleventh of July it was returned to the plaintiff.

On the twelfth of July, the defendant was informed of the aforesaid facts by Mr. Manier, plaintiff's cashier, but the draft was never protested.

*S. C. Millard,* for the appellant.

*Edward K. Clark,* for the respondent.

LEARNED, P. J.:

It is not pretended that Pickering was guilty of any fraud, or that he was a party to the fraud done by another person.

By indorsing the note he became liable, if charged as an indorser, whether the note was genuine or not. But he has never been charged as an indorser, and is, therefore, not liable as such.

Nor did he receive any of the money. In the case of *Bank of Commerce* v. *Union Bank* (3 N. Y., 230), the recovery was not on the bill or note, but was *for money paid to the defendant by mistake.* So, also, in the case of *White* v. *Continental Bank* (64 N. Y., 316). But, as Pickering did not receive any of the money, he is not liable to an action as for money paid by fraud or mistake. That is always an action, equitable in its character, based on the fact that the defendant has money which, in justice, he ought not to retain as against the plaintiff. No such claim can exist against Pickering.

The judgment should be reversed and a new trial granted, costs to abide the event.

BOCKES, J., dissenting :

The obligation of the parties to. commercial paper, makers and indorsers, is presumably in the order in which their names appear thereon. The paper, in theory, passes to the holder through the hands of the indorsers in that order. In this case, the defendant did not receive the money on the draft. Still the money was advanced by the plaintiff upon the faith of his indorsement. Hence, the defendant must be held to have indorsed the paper to the plaintiff, and their relation became and was strictly that of indorser and indorsee. The defendant then, by his indorsement, guaranteed to the plaintiff, not only the genuineness of the signatures on the paper antecedent to his own, but also that the instrument itself was genuine. He then could not deny his liability to the plaintiff, on the ground that the draft had been raised from twenty-five dollars to $1,200, and must be held responsible the same as if he had received the money from the plaintiff on the spurious paper. Then, holding the defendant to the genuineness of the draft, has he been legally charged according to his liability on the facts found ? He was not charged in the usual mode by making demand of payment and giving notice of dishonor. But the learned judge held him liable, on the ground that due diligence was used in forwarding and presenting the draft for payment and in discovering the alteration, and notifying the defendant of the fact ; that having received the money from the plaintiff, as in law he must be held to have done, on spurious paper, he will be held bound to its return in case of due diligence in discovering the character of the paper and informing him of its invalidity. This ruling seems well supported by the decision in *Bank of Commerce* v. *Union Bank* (3 N. Y., 230). It is there said, in substance, that in a case like this, due diligence in detecting the spurious character of the paper, and in giving notice of its invalidity to the indorser, was all that was required of the indorsee to establish the liability of the former to respond. The language of the court in that case is appropriate here. As is there said, the action is not founded on the bill as an instrument containing the contract on which the suit is brought. The defendant has obtained the money of the plaintiff, without right, on the exhibition of spurious paper as genuine ; its invalidity being unknown to both. The defendant

ought not, in conscience, to retain the money, because it does not belong to him ; and, for the further reason, that the defendant and the previous indorsers have, each, on the same principle, their remedy over against the party to whom they respectively paid the money, until the wrong-doer is finally made to pay. If that party should be irresponsible, or if he cannot be found, the loss ought to fall on the party who, without due caution, took the bill from him. In cases where no negligence is imputable to the transferee or holder, in failing to detect the spurious character of the paper, the want of notice, within the ordinary time, to charge the previous parties to the bill, is excused, provided notice of the invalidity of the paper be given as soon as it is discovered. Such is the reasoning and, in general, the precise language of the court in the case cited. (See page 237.) It cannot, with fairness, be claimed that due dilligence is not shown in this case in the particulars above suggested.

The judgment should be affirmed, with costs.

Present — LEARNED, P. J. ; BOCKES and BOARDMAN, JJ.

Judgment reversed, new trial granted, costs to abide event.