Continental National Bank of New York, Appellant, *v.*
Tradesmen's National Bank of New York, Respondent.

1. Banking — Negligent Certification of Draft — Money Paid·
by Mistake. A bank which has negligently certified a raised draft
cannot recover back its amount, as moneys paid by mistake, from another
bank with which the draft was deposited, and which, relying upon the
negligent acts of the former bank in certifying, accepting and paying the
draft, parted with the moneys upon the demand of its depositor.

2. Appeal — Charge Must Be Considered in its Entirety. An
objectionable statement in a charge should be considered in connection
with the whole of the charge upon the subject, and error can only be pre-
dicated if, upon such consideration, it is plain that the jury may have been
misled as to the scope of their investigation.

3. Banks — Certification of Draft — Estoppel. The liability of a
bank to bear the loss arising from its negligent certification of a raised
draft, the amount of which it paid to a bank with which the draft had
been deposited, and which, in reliance on the acceptance, payment and
retention of the instrument by the certifying bank, paid the depositor,
rests, not upon the mere certification, but upon the estoppel arising from
its subsequent acts and continued negligence until it was too late to pro-
tect itself or the bank with which the draft was deposited from loss.

4. Trial — Payment of Draft — Question for Jury. It is a ques-
tion for the jury, to be determined upon consideration óf the rules of the
clearing house and the evidence, whether a bank, which made payments
to a depositor upon the faith of a raised draft which had been certified
by another bank and which had been sent to the clearing house, was
warranted in considering the draft as one that had been paid, and whether
it acted in good faith in paying out the moneys to its depositor.

5. Appeal — Refusal to Charge — Repetition. The refusal of a
requested charge is not erroneous when its subject-matter has been suffi-
ciently covered by the charge already given.

*Continental Nat. Bank* v. *Tradesmen's Nat. Bank,* 59 App. Div. 103,
affirmed.

(Argued November 21, 1902; decided January 20, 1903.)

Appeal from a judgment of the Appellate Division of the
Supreme Court in the second judicial department, entered
April 4, 1901, affirming a judgment in favor of plaintiff
entered upon a verdict and an order denying a motion for a
new trial.

The action was brought to recover $7,584, with interest ; a

sum, which, as the complaint alleges, was paid by the plaintiff to the defendant under a mistake of fact. The following facts were disclosed by the evidence upon the trial. A cashier's check, or draft as it is sometimes spoken of, was drawn by the Philadelphia National Bank, of Philadelphia, Pennsylvania, upon the plaintiff, to the order of Henry F. Thompson, for $76.00 and bore the date of June 7, 1894. With the date altered to June 12, 1894, and the sum payable raised from $76.00 to $7,660, this check was presented by some one, on June 13, 1894, to the plaintiff's paying teller, with a request for its certification. It was certified and, on the same day, it was deposited with the defendant to the credit of the payee, Thompson; with whom, some time previously, an account had been opened as a depositor. On the morning of June 14th, the defendant sent the check for payment by the plaintiff through the clearing house, in New York city, and the same was paid in the exchanges of the day; both banks being members of the Clearing House Association. Between two and three o'clock of the same day, Thompson drew out from the defendant, upon his checks, all of the moneys standing to his credit in account, except the sum of about $660; disappeared and was never found. Later in the afternoon, between four and five o'clock, the plaintiff's clerks discovered that the check had been fraudulently raised and at once looked up, and gave notice to, the defendant's cashier. This action was then instituted to recover the amount, which the plaintiff had paid out upon the certified check, in excess of the amount for which it had originally been issued to its payee.

It appears that the Philadelphia bank kept a deposit account with the plaintiff, upon which it would draw, in the form of cashier's checks. When its account was drawn upon in this way, it was accustomed, upon the same day, to advise the plaintiff by letter of the same and that practice was followed in the present instance. The letter of advice was received by the plaintiff and was handed to the proper bookkeeper; whose duty it then became to keep, and to observe, the same

for the purposes of comparison with the check when presented. Such cashier's checks bore serial numbers and these numbers would be stated in the letters of advice. That was, also, done in the present instance. When, on June 13th, certification of this cashier's check was demanded, the teller asked of the bookkeeper about its correctness, exhibiting it to him, and he received an affirmative answer. As was his duty, he made the requisite entries of the certification, except that he omitted to enter the serial number which the check bore. When, in the afternoon of the day, the bookkeeper came to post his books, he observed that the serial number of the check, which had been certified, was lacking in the teller's entry of the certification and the general bookkeeper's attention having been called to this important omission, he said that they would wait until the check came in. On the following morning, the check was received from the clearing house by the plaintiff; but the discovery of its fraudulent alterations, in date and in amount, was not made until after four o'clock in the afternoon and resulted, then, from comparison with the letter of advice. According to the rules and practice with respect to clearances of checks, drafts, etc., by banks, which are members of the Clearing House Association, the same are brought to the clearing house at ten o'clock in the morning of the day following their deposit and such exchanges are then made between the various banks that, within half an hour, each bank has received back the drafts made upon it. Its account with the clearing house will then make it appear, either, as a debtor, by reason of the sum total of the drafts upon it exceeding in amount that of those held by it upon other banks, or as a creditor, if the converse be the fact. If it is a debtor in the day's exchanges, it must pay the balance appearing against it between 12.30 and 1.30 o'clock to the manager of the clearing house; while if a creditor, it must receive the balance appearing due to it from the manager at 1.30, or as soon thereafter as the amounts can be made up and proved. By another provision of the clearing house rules, all checks, drafts, etc., which are missent, or are not good, for any cause, are to be

returned on the same day to the bank, from which they came, and claims arising upon the same are to be adjusted directly with the particular bank concerned, and "should be made before 3 o'clock of the same day." On June 14th, both the plaintiff and the defendant appeared, as the result of the day's exchanges, to be creditors of the clearing house and the balances in their favor were paid by the manager.

. It was proved that, upon the receipt by the plaintiff from the clearing house of the checks, drafts etc. in the exchanges of the morning, according to the usual practice; the same were sorted in convenient bundles; the certified checks being separated for comparison with entries. All checks were, finally, canceled by perforation and this procedure never occupied to exceed three hours of time; being, therefore, presumably completed, by, or before, 1.30 o'clock. It, also, appeared that Thompson, the payee of the check and depositor with the defendant, was unknown to the latter; having been recently accepted as a customer, without any reliable information concerning him. When he desired to draw out the moneys from the defendant, between two and three o'clock of the afternoon of June 14th, the paying teller first ascertained that his checks were drawn upon a deposit account made up, with the exception of a few dollars, from the previous day's deposit of the certified check and then paid out the moneys in reliance thereupon. The defendant's paying teller, also, testified that, in the course of his experience, the custom was for banks to make reclamations between half-past twelve and half-past one o'clock of the day and they were made upon the paying teller.

The case was submitted to the jury and a verdict was rendered for the plaintiff for a sum, which represented the balance remaining with the defendant to the credit of its depositor and which defendant conceded to the plaintiff. The judgment upon the verdict has been unanimously affirmed by the Appellate Division, in the first department, upon the plaintiff's appeal from the unsatisfactory verdict, and an appeal has been, further, taken to this court.

*George W. Wickersham* for appellant. The court erred in instructing the jury that the question for their determination was whether or not the plaintiff was guilty of culpable negligence in certifying the draft in question. (*M. Nat. Bank* v. *Nat. City Bank,* 59 N. Y. 67; *Clews* v. *Bank of New York,* 89 N. Y. 418; *People* v. *Koerner,* 154 N. Y. 355; *People* v. *Helmer,* 154 N. Y. 596; *Chapman* v. *E. R. Co.,* 55 N. Y. 579; *Philips* v. *N. Y. C. & H. R. R. R. Co.,* 127 N. Y. 657; *Gossler* v. *Lissberger,* 19 N. Y. Wkly. Dig. 429; *Gillespie* v. *D. D., E. B. & B. R. R. Co.,* 12 App. Div. 501; *C. E. Bank* v. *A. D. & T. Co.,* 149 N. Y. 714.) The defendant failed to show that it paid out its money to its depositor after payment to it by plaintiff of the amount of the fraudulently raised draft, or in reliance upon such payment. (*Thornton* v. *Rogers,* 75 Hun, 243.) The court erred in submitting the construction of the clearing house rules to the jury. (*Finlayson* v. *Wiman,* 84 Hun, 327; *Dwight* v. *G. L. Ins. Co.,* 103 N. Y. 352; *M. Nat. Bank* v. *N. E. Bank,* 101 Mass. 281; *Nat. Bank of N. A.* v. *Bangs,* 106 Mass. 441; *N. Nat. Bank* v. *Nat. Bank,* 139 Mass. 513; *Northrup* v. *Porter,* 17 App. Div. 80.) The fact that plaintiff's mistake was due to carelessness or that it had the means of discovering the mistake which, had it then availed itself of, would have prevented the mistake from being made is no defense to the action. (*Lucas* v. *Worsick,* 1 M. & R. 293; *Kelly* v. *Solari,* 9 M. & W. 54; *Bell* v. *Gardiner,* 4 M. & G. 11; *Townsend* v. *Crowdy,* 8 C. B. [N. S.] 477; *U. Nat. Bank* v. *S. Nat. Bank,* 43 N. Y. 452; *Lawrence* v. *A. Nat. Bank,* 54 N. Y. 432; *Nat. Bank* v. *Nat. M. Bank,* 55 N. Y. 211; *C. E. Bank* v. *Nassau Bank,* 91 N. Y. 74; *C. Nat. Bank* v. *N. River Bank,* 44 Hun, 114; *Third Nat. Bank* v. *Merchants' Nat. Bank,* 76 Hun, 475.) The court erred in refusing to charge that the plaintiff owed no duty to the defendant to compare the draft in question with the letter of advice from the Philadelphia National Bank before accepting the same, and making no representation to the defendant as to the genuineness of the body of the draft, it is not now estopped from showing that the

money was paid under a mistake of fact and should be refunded. (*Clews* v. *Bank of N. Y.*, 89 N. Y. 418.) The court erred in instructing the jury that it was for them to determine whether or not with knowledge of the facts which had been communicated to the officers of the Continental Bank it was culpable negligence on their part to receive this draft as they did on the morning of June fourteenth at about half-past ten o'clock without examination or verification and to retain it until after two o'clock. (*Frank* v. *Lanier*, 91 N. Y. 112; *F. Nat. Bank* v. *M. Nat. Bank*, 76 Hun, 475.)

*Charles E. Rushmore* for respondent.    There was no error in the charge of the trial judge. (*Gillespie* v. *D. D., E. B. & B. R. R. Co.*, 12 App. Div. 503; *Caldwell* v. *N. J. S. Co.*, 47 N. Y. 282; *Crist* v. *E. Ry. Co.*, 58 N. Y. 633.) Culpable negligence in the certification of a check should defeat a recovery of the money paid on it, where the defendant has parted with value on the faith of the certification and payment of the check, or on the certification alone. (*Mayer* v. *Mayor, etc.*, 63 N. Y. 457; *F. Nat. Bank* v. *Leach*, 52 N. Y. 53; *M. Nat. Bank* v. *N. C. Bank*, 59 N. Y. 72; *Canal Bank* v. *Bank of Albany*, 1 Hill, 287; *Bank of Commerce* v. *Union Bank*, 3 N. Y. 230; *Nat. Bank of Commerce* v. *Nat. M. B. Assn.*, 55 N. Y. 211; *Nat. Park Bank* v. *Ninth Nat. Bank*, 46 N. Y. 77; *F. & M. Bank* v. *Butchers' Bank*, 16 N. Y. 125; *I. Nat. Bank* v. *Wetherald*, 36 N. Y. 335; *Crawford* v. *West Side Bank*, 100 N. Y. 54.) The failure of the plaintiff to notify the defendant of the forgery until late in the evening of June fourteenth should preclude a recovery. (*Nat. Bank* v. *Nat. Bank*, 50 N. Y. 584; *Knight* v. *Whiffen*, L. R. [5 Q. B.] 660.)

GRAY, J.    This case comes to us upon questions of law, raised by exceptions taken upon the trial.    All questions of fact depending upon conflicting testimony, or upon inferences from the evidence adduced, have been forever settled by the unanimous affirmance of the judgment at the Appel-

late Division.   It is quite obvious, as well from the nature of the pleadings, as from the course of the trial, that the questions to be decided by the jury related to the negligence of the plaintiff in giving certification to the check, when it was in possession of a letter of advice showing that the check had been raised since its issuance; to its continuing neglect to ascertain the alterations in the check, when received through the clearing house exchanges on the following morning, and, thereupon, to make a reclamation upon the defendant within a reasonable, or the usual, time for so doing, and, lastly, to what justification, if any, the defendant had in paying out to its depositor the moneys represented by his deposit of the certified check.   The verdict of the jury must be regarded as establishing all these questions adversely to the plaintiff and we must consider the plaintiff as having been culpably negligent in its course of dealing with the check, which, indeed, was not disputed, and the defendant as having paid out the moneys in good faith, relying upon what the known facts appeared to represent.   The right of a bank, certifying a check erroneously, to bring an action to recover back moneys paid upon the certified check, as moneys paid by mistake, as a general proposition, is not questioned.   If there was nothing more of the case than that fact, the plaintiff's right of recovery would be undoubted; but its negligence in certifying the check was continued in subsequently accepting and paying it; with the result that, in reliance upon the apparent attitude and the acts of the certifying bank, and in the usual course of business, the defendant parted with the moneys upon the demand of its depositor.   Thus, the question becomes one of where, as between the parties, the burden of the loss shall rest.   The verdict of the jury having determined the plaintiff to have been the culpably negligent one, the judgment should settle that question; unless some error of a material character has been committed upon the trial.

The principal error which the plaintiff insists upon is to that portion of the charge, in which the trial judge said to the jury that, "the question seems to me to be narrowed

down to a single one, and that is whether the Continental
National Bank, at the time that they certified the draft of the
Philadelphia Bank drawn upon it, were guilty of culpable
negligence in doing so.    That appears to be about the ques-
tion involved in this case.    And that is, as I understand, the
question as stated by Mr. Justice Ingraham in his opinion in
this case on appeal."    To this observation of the trial judge,
the plaintiff excepted and it is argued, in support of the
exception, that it enlarged the rule of law with respect to the
effect of certification, as it had been established by the deci-
sions, and that the jurors were left to find adversely to the
plaintiff, irrespective of whether the defendant had paid out
the moneys to its depositor in reliance upon the plaintiff's pay-
ment of the certified check.    That this expression of opinion
by the trial judge could not have prejudiced the plaintiff's
case, I entertain no doubt.    Upon its face, it was but a per-
sonal reflection of the trial judge and not, actually, an instruc-
tion to the jury.    It was uttered after the jury had been
informed as to the nature of the cause of action and of the
defense, and after they had been correctly instructed as to the
legal effect of the certification of a check, by a citation from
the opinion of this court in *Clews* v. *Bank of New York Nat.
Banking Assn.*    The observation was followed, immediately,
by a reference to the decision of the Appellate Division upon
the case, as it had come up from a former trial of the issues.
The opinion then rendered in that court was quoted from, in
the following language ; " It was, at least, a question for the
jury to determine whether or not, with the knowledge of the
facts which had been communicated to the officers of the
plaintiff, it was culpable negligence on their part to receive
this draft, as they did, on the morning of June fourteenth, at
about half-past ten o'clock, without examination or verifica-
tion, and to retain it until after two o'clock ; and if the jury
should find in the affirmative, *and that the defendant made
the payment to its depositor relying upon the acceptance and
payment of the draft by the plaintiff*, the defendant would be
exonerated from liability for anything more than the amount

remaining in its hands to the credit of the fraudulent depositor, when notice of the forgery was given to the defendant." The trial judge added, " That is the rule which I am bound to adopt in this case, because we are all bound by the decision of the Appellate Division of this court." The jury was, thus, distinctly told that, in law, the plaintiff was precluded from recovering back the amount, which it had paid upon the fraudulent check, only, if " the defendant made the payment to its depositor relying upon the acceptance and payment of the draft by the plaintiff." Thereafter, the facts in evidence were reviewed and the rule of law, which the trial judge had announced as controlling in the case, was repeated, in similar language, at the close of the charge. I do not think that we should isolate the particular observation which was objected to, in order to find error. The observation should be considered in connection with the whole of the charge upon the subject and error could only be predicated if, upon such consideration, it was plain that the jury may have been misled as to the scope of their investigation. Standing alone, an inference was, of course, possible from the casual expression of the trial judge as to how the question appeared to him; but the jurors were distinctly, and repeatedly, informed as to what the law obliged them to determine. They were instructed that the defendant's reliance upon the acceptance and payment of the check by the plaintiff was a necessary adjunct to an affirmative finding of culpable negligence in the plaintiff, in order to support a verdict for the defendant. Assuming that the trial judge's remark was incorrect, by itself, it could have had no effect upon the jurors' minds. They were carefully instructed by what considerations they should reach a conclusion upon the relative rights of the parties. Indeed, their attention was directed to the importance of determining at what time the draft was paid by the exchange of checks and they were told that " it makes some difference in this case as to when that took place. * * * The question is, when it was paid." While the certification was an initial fault, which might be regarded as inducing the subsequent careless conduct of plain-

tiff's clerks, it is quite significant that the trial judge did not leave the case with the jury upon the proposition that that fault was sufficient, alone, to charge the plaintiff with the loss. In emphasizing the first act of certifying the check, as the feature, which, under the circumstances, most impressed him, the trial judge did not mislead the jury; because, if that was culpable negligence, the plaintiff had come under a responsibility from which it should, and might, have discharged itself by the exercise of ordinary care. In failing to do so, we have a situation, where the plaintiff's negligence was unbroken and which estops it from raising a question about the insufficiency of certification alone to charge it with the loss.

There is no question but that the liability, or obligation, which a bank assumes in certifying a check drawn upon it, is well settled by decisions of this court, and with such definiteness of expression as to lend to the rule thus settled the greatest weight. (See *Marine National Bank* v. *National City Bank,* 59 N. Y. 67; *Clews* v. *Bank of New York Nat. Banking Assn.,* 89 ib. 419.)

In *Marine National Bank* v. *National City Bank,* the plaintiff sued to recover from the defendant moneys, which were alleged to have been paid by mistake. A check on the former had been altered, as to date, payee and amount, and, on presentation, had been duly certified. It was deposited with the defendant and, on the following morning, its amount was paid by the plaintiff. The depositor with the defendant was unaware of the alterations and, relying upon the certification alone, had given to the person offering the certified check its equivalent in gold. A judgment recovered by the plaintiff was upheld by this court and the doctrine was laid down, in strong language, that the certifying bank was not deemed to warrant otherwise as to the check certified than the genuineness of the drawer's signature and the sufficiency of his credit, and it was said that "there is no ground of reason, or authority, for extending the rule to matters not being especially within the knowledge of the certifying bank." In that case, there was no question of a loss by the defendant. It still had the moneys

and the question was, solely, as to its liability to refund them, for having been paid under a mistake of fact. It had not changed its position.

In *Clews* v. *Bank of New York Nat. Banking Assn.*, the question discussed in the opinion was as to the liability of the defendant upon a foreign draft, which it had certified and which certification it had, upon the inquiry of a clerk of the plaintiffs, pronounced to be good. At the time of certification, the draft had been altered in date, name of payee and amount. The inquiry was made by the plaintiffs, before taking it in payment for some bonds. It was held, as in the *Marine Bank* case, that the defendant's liability was like that of the acceptor of a draft and its certification "guaranteed the genuineness of the drawer's signature, and represented that it had funds of the drawer in its possession sufficient to meet the check, and it engaged those funds should not be withdrawn from it by the drawer, to the prejudice of any *bona fide* holder of the check; and the certificate did not impose upon the defendant any further or greater responsibility." It was said that " when a check has been raised by some person without authority before certification, the certifying bank cannot be called upon, in consequence of its certification, to pay the amount of the raised check; and when a bank has thus certified a raised check by mistake and subsequently pays the money thereon, *without any culpable negligence on its part*, it can recover the amount thus paid as money paid by mistake." (Citing authorities.) " The certification of a check," it was observed, " never imports that there is money in the bank absolutely applicable to the payment of the amount named in the check. * * * It simply imports that the drawer has money to the amount of the check, which will not be withdrawn, and which will be paid upon the check if it is properly payable thereon." In that case, which had several trials, a judgment, finally, recovered by the plaintiffs was affirmed; because it rested upon a finding by the jury of culpable negligence in the defendant, in having answered the inquiry by the plaintiffs, without

referring to the information which it possessed. (105 N. Y. 398; 114 ib. 76.)

In the *Marine Bank* case, Judge ALLEN took occasion to remark that if the court had unduly limited the liability of the certifying bank and had denied the potency of the act of certification, which, for the convenience of business transactions, it was thought it should have, the remedy was in the modification of the form of the certificate, so as to express the enlarged obligation contended for.

The rule of law, as laid down in these cases, with respect to the effect of certification, should have no amplification. Indeed, the concession is made by the respondent that certification does not guarantee the genuineness of any portion of the body of the check and that no duty rests upon the certifying bank to make inquiry relative to such genuineness and, upon the request of the plaintiff, the jury was instructed to similar effect. The rule rests upon the plain reason that a certifying bank is bound to know the signature of its depositor and the condition of his account with it; but that it is not bound to know the handwriting of the body of the check. Certification, therefore, within the authorities, as in the case of the acceptance of a bill of exchange, has reference to facts, which are legitimately chargeable to the knowledge of the certifying bank, and not to any other fact about the paper. (Story on Bills, §§ 262, 263; *Bank of Commerce* v. *Union Bank*, 3 N. Y. 230; *National Bank of Commerce in N. Y.* v. *National Mechanics' Banking Association*, 55 ib. 211; *Marine Nat. Bank* v. *National City Bank, supra*.)

The liability of the plaintiff to bear this loss does not rest upon the mere certification of the draft, it arises by reason of the estoppel, wh'ch its continued neglect had worked. When the plaintiff, so tardily, discovered the alterations in the check, it was, then, too late to protect itself, or the defendant, from loss. The money was no longer under the control of the latter. Certification had given to the check a measure of currency, by its guaranty of signature and of funds, and the defendant, in the due and regular course of the banking busi-

ness, having paid out the moneys upon warrantable presumptions of correctness and of payment, the plaintiff should not be heard upon its demand for the repayment of the moneys. The plaintiff was guilty of culpable negligence in certifying the check and in paying and retaining it, thereafter, and, these facts being established, it would be highly inequitable to admit its right to recover.   The remark of the trial judge may well be regarded as a justifiable reduction of the facts proved to the proposition stated by him ; which, if not correct in law when taken alone, does not constitute reversible error, because of its explanation from the context.

It is, then, urged by the appellant that the court erred in refusing to charge, upon its request, "that under the constitution of the New York Clearing House Association * * * checks presented by one member against another member are not actually paid until three o'clock in the afternoon of the day on which they are delivered at the Clearing House to the bank against which they are drawn," and "that a check or draft presented to the bank on which it is drawn through the New York Clearing House cannot be considered as paid until (1) either the drawee bank has paid into the Clearing House the amount which it owes to the Clearing House as a result of the previous day's transactions, or (2) it has received from the Clearing House the amount due to it as a result of the said transactions."   To the first request the trial judge replied that he " declined to charge any further than he had already charged the jury," and he declined the second, " because that was a question of fact for the jury." It is not quite perceptible how the second request has any relevancy, upon the facts of this case.   In his charge, the trial judge had instructed the jury that as the two banks " were both members of the Clearing House Association, they were both bound by the rules of the association," and they " might take the rules of the association * * * into consideration in determining as to when the draft was paid in the exchange of checks. * * * The question is when it was paid.   The Continental Bank claims that as soon as it

discovered the forgery, which was about four o'clock in the afternoon, it gave all the notice it could give, under the circumstances, to the Tradesmen's Bank." The argument is made that, by refusing to charge the requests, the court submitted the construction of the clearing house rules to the jury and, therefore, erred. I do not think that that was the case. It was a question of fact, upon the evidence, as to whether the defendant was entitled to regard the check as paid. The clearing house rules do establish periods of time at, or within, which the daily exchanges of checks and payments of resultant balances shall be made. The hour for making exchanges is ten o'clock precisely. When the daily exchanges are completed at the clearing house, the banks, which appear as debtors to the clearing house, are obliged to pay the balances against them between twelve-thirty and one-thirty P. M., and balances in their favor are to be paid at one-thirty o'clock, or as soon thereafter as they can be made up. As to reclamations arising upon checks, or drafts, not good for any cause and which are to be made directly between the banks concerned, the clearing house rule simply provides that they "should be made before three o'clock." In this case, both the plaintiff and the defendant were creditors of the clearing house and they were paid. The plaintiff made no reclamation upon the defendant, until between four and five o'clock in the afternoon. According to the testimony of the defendant's clerk, it had been customary to make reclamations between half-past twelve and half-past one o'clock of the day. It was clearly, in my opinion, a question for the jury to say, upon a consideration of the provisions of the rules and of the evidence in the case, whether the defendant was warranted in considering the check as one that had been paid. In the next place, I do not think that the plaintiff is in a position to take this objection, in view of its own negligent conduct. The clearing house rules had no application to the case. The question was one of the good faith of the defendant, in paying out the moneys to its depositor when it did, and that was one purely, of fact upon all the

evidence, which the verdict of the jury has settled. It was not one to be determined by a construction of the rules of the clearing house.

It is further urged by the appellant that the court erred in refusing to charge, at its request, "that the plaintiff owed no duty to the defendant to compare the draft in question with the letter of advice from the Philadelphia National Bank before accepting the same, and, making no representation to the defendant as to the genuineness of the body of the draft, it is not now estopped from showing that the money was paid under a mistake of fact and should be refunded." The trial judge declined to charge in that respect, further than he had referred to the subject-matter in his charge. I think that there was no error in the ruling. What the trial judge had said in the charge had sufficiently covered the subject of the request. It may be true that the plaintiff owed no duty of the kind to the defendant, in particular; but that is not the determining question. The question was whether the plaintiff had been so culpably neglectful of its general duty, after giving the check the currency imparted by its certification, and had been so careless in the matter, as to estop it from recovering in this action. The trial judge had instructed the jury, in effect, that, as the law was settled, the fact of a culpable neglect in certifying the check must be accompanied by the further facts of its acceptance and payment, and of the payment by the defendant to its depositor in reliance thereupon. The estoppel upon the plaintiff was created by its whole negligent conduct, from the first error in certifying the check, to the subsequent errors of its payment and retention.

I think that no material errors were committed upon the trial and that the case was fairly submitted to the jury upon the questions of fact, which it involved.

For the reasons given, the judgment should be affirmed, with costs.

BARTLETT and WERNER, JJ., concur; PARKER, Ch. J., HAIGHT, MARTIN and VANN, JJ., concur in the result and in

the opinion, except in so far as it seems to undertake to define the boundaries of certification of checks, and as to all that is said in that direction no opinion is expressed, it not being deemed necessary.

Judgment affirmed.