THE FIRST STATE BANK OF SCOTT CITY v. B. VOGELI.

No. 15,429.    (96 Pac. 490.)

SYLLABUS BY THE COURT.

1. BANKS AND BANKING—*Recovery of Amount of Check Paid—Forgery—Verdict and Findings Inconsistent.* In an action by a depositor against a bank to recover the amount of a check, which it was alleged was forged, the jury returned a verdict for the plaintiff and a special finding that they were unable to agree whether the signature to the check was written by the plaintiff. *Held,* that it was error to refuse to set aside the verdict and to render judgment thereon.

2. ———— *Check Written on Blank of Another Bank.* · It is not negligence for a bank to pay a check written on the blank of another bank without making inquiry.

3. ———— *Body of Check and Signature—Handwriting.* Neither

any rule of law nor the ordinary course of business renders it a matter of suspicion that the body of a check is not written in the handwriting of the maker.

4. ——— *Negligent Payment of a Check—Evidence.* None of the facts found by the jury were sufficient to constitute negligence on the part of the bank.

Error from Scott district court; CHARLES E. LOBDELL, judge. Opinion filed June 6, 1908. Reversed.

## STATEMENT.

THE plaintiff, B. Vogeli, brought this action against the bank to recover the proceeds of a check for $1800, the signature to which he claims was forged. The facts, briefly stated, are as follow: On May 4, 1904, plaintiff had on deposit in the defendant bank the sum of about $4000. At that time he informed the cashier of the bank that he was going to Illinois and Missouri on a visit, and requested drafts, or a letter of credit, so that he might get his checks cashed anywhere, and was given a letter of credit good for the amount of $400. The petition alleged that the check which the bank paid was not drawn on one of its own check-blanks but on a blank of the American National Bank of Kansas City, Missouri; that the plaintiff never signed the check, and that defendant carelessly, negligently, and without any authority from him, cashed the check without making any inquiry of the plaintiff as to its genuineness; that if the defendant bank had exercised due diligence and had made inquiry it could have ascertained before paying the check that it was forged and fraudulent. The petition further alleged that the plaintiff returned to Scott City on the 15th day of September, 1904, had his bank-book balanced and his checks returned, and immediately notified the bank that the check in controversy was fraudulent and forged, and demanded of the bank repayment of the amount.

There was a conflict in the evidence as to the genuineness of the signature to the check, expert testimony being offered on both sides. The plaintiff was asked

if the signature to the check was his and he answered as follows: "Don't look like my signature; I never signed my signature to no check." In his testimony he admitted that while in Sedalia, Mo., he met a stranger who offered to send him some seed wheat if he would sign his name in a book; that he wrote his name in what appeared to be a blank book with a fountain pen, which the stranger handed to him, and that he signed it while standing in the street; that he did not have his glasses on at the time, though he generally used glasses when he wrote; that he had no place on which to rest his arm at the time of writing; that in the conversation he had informed the stranger that he lived in Scott City and had sold his farm. The officers of the bank and others testified that after he returned home he admitted in different conversations that his signature to the check was genuine but that he had no intention of signing a check when he wrote his name. On September 19 he signed a statement for the bank to that effect. On October 28 he signed another statement, as follows:

"SCOTT CITY, KAN., October 28, 1904.

"Relative to the check in favor of J. O. Montgomery on the First State Bank of Scott City, Kansas, given August 15, 1904, and indorsed by J. O. Montgomery and others, is fraudulent, except my signature, which is genuine, but the said signature was obtained by fraud by the said J. O. Montgomery, or J. O. Logan, as he represented himself to be at the time of obtaining the signature.                          B. VOGELI."

The plaintiff denied that he knew the contents of these papers when he signed them, but this was contradicted by several witnesses. One of the officers of the bank went to Kansas City at different times for the purpose of attempting to recover the money. He was accompanied by the plaintiff on one of these trips, and the bank officers testified that the foregoing papers were signed by the plaintiff in order to be used in recovering the money. The plaintiff had been a depositor

of. the bank for a number of years. He was sixty-seven years of age, rather illiterate, and frequently had the cashier of the bank write his checks for him, which he would sign. ·

The jury returned a verdict for the plaintiff for the amount of the check, upon which the court rendered judgment. In addition to the general verdict the jury returned the following findings:

"(1) Ques. Was the signature to the check in controversy written by the plaintiff? Ans. Can't agree.

"(2) Q. Was the defendant guilty of negligence in paying said check? A. Yes.

"(3) Q. If you answer that the defendant was guilty of negligence, state what the negligence consists of? A. In paying a check that was written on a blank of another bank, without making inquiry, and for an amount in excess of letter of credit, and after having paid the check written by Vogeli on a bank check of defendant bank for $100, and seeing that the check sued on was not filled up by Vogeli.

"(4) Q. Was the plaintiff guilty of negligence in signing his name to some blank paper, or partly filled out paper, in the hands of a stranger? A. Yes."

The bank brings these proceedings in error.

*F. L. Martin*, and *J. S. Simmons*, for plaintiff in error.

*W. B. Washington*, *S. R. Peters*, and *F. B. Peters*, for defendant in error.

The opinion of the court was delivered by

PORTER, J.: The instructions properly told the jury that the burden was upon the plaintiff to prove that the signature was not genuine and that he must do so by a preponderance of the evidence. On this very material issue the jury were unable to agree, but for some reason, which is not apparent, the court refused to set aside the verdict and rendered judgment. This was error. If the signature was genuine the bank was obliged to pay, unless there was something in the appearance of the check to excite suspicion or there was

some fact known to the bank sufficient to put it upon inquiry. True, the jury found that the bank was guilty of negligence in paying the check, but they also found in what the negligence consisted, and no one of the things, or all of them combined, would constitute negligence.

It is not negligence for a bank to pay a depositor's check written on the form of another bank. There is no invariable rule by which customers of a bank are required to use a blank check prepared by the bank, and in the ordinary course of business it is of very common occurrence to use a check of another bank, erase the name and insert that of the bank in which the depositor's account is kept. This occurs every day in all banks.

Nor did the fact that the check was for an amount in excess of the 400-dollar letter of credit tend to prove negligence or put the bank upon inquiry. The letter was given the plaintiff to establish credit with other banks or persons with whom he might have business. His account was subject to check, and he needed no letter of credit to oblige the bank to pay checks drawn by himself. Again, the fact that some days previously the bank had paid a check for $100 drawn by the plaintiff on a regular blank of the defendant was wholly immaterial and not sufficient to excite suspicion as to the genuineness of the check in controversy. The last circumstance found by the jury is that the check was not filled out by the plaintiff, but there was nothing unusual in this, even if the plaintiff had not been in the habit of having others fill out his checks.

"The rule requiring the bank to know the customer's handwriting was always confined to requiring a knowledge of his signature. Neither any rule of law nor the ordinary course of business renders it a matter of suspicion that the body of the check or bill is not written in the handwriting of the maker or drawer." (2 Morse, Banks & Banking, 4th ed., § 480.)

The rule is stated in volume 2 of the fourteenth edi-

tion of Daniel on Negotiable Instruments, section 1654a, as follows:

"But a bank is not bound to know more than the signature of the drawer of the check; for in the ordinary course of business the body of the check is as often as otherwise filled up by a clerk, and it is by no means a matter of suspicion that it is not filled up in the handwriting of the drawer. If the rule were otherwise, a bank could never safely pay a check filled up in a handwriting not the drawer's until it had inquired of the drawer whether it was properly filled up. And to require this would greatly embarrass commercial transactions."

(To the same effect see *Redington v. Woods*, 45 Cal. 406, 419, 13 Am. Rep. 190; *Bank of Commerce v. Union Bank*, 3 N. Y. 230, 234; *National Park Bank v. Ninth National Bank*, 55 Barb. [N. Y.] 87, 124.)

If this check had been genuine and the failure of the bank to pay it resulted in loss to the plaintiff the bank would have been liable to him for all damages resulting therefrom, and none of the circumstances mentioned by the jury would have relieved the bank from its liability. Of course, a false or fraudulent alteration in any material matter in the body of the check, after signature, would have constituted technical forgery, and the bank would have been liable to the plaintiff, unless by some act of negligence upon his part he furnished the opportunity for the fraud which deceived the bank, in which case he must suffer the just consequences of his own carelessness and bear the loss. The jury found that the plaintiff was guilty of negligence in signing his name to some blank or partly filled out paper in the hands of a stranger, and it is insisted that on the facts found judgment should be directed for the defendant. There was no motion or request for judgment notwithstanding the verdict, and it is unnecessary to consider the effect of this finding.

The motion to strike from the petition all allegations with reference to the payment of the 100-dollar check

and the giving of the letter of credit should have been sustained, since they were averments of immaterial facts which added nothing to the plaintiff's cause of action.

The failure of the jury to agree upon one of the most material issues in the case, as well as the inconsistent findings as to the negligence of the bank, require that the judgment be reversed and a new trial ordered.