Edward Goodell, J.
The issue raised by the defendant’s motion for summary judgment is whether a bank is liable to the payee of a check that has been altered by the drawer after certification.
Wallach Sons, Inc., the plaintiff, is engaged in the retail jewelry business. About July 17, 1968, Carol A. Jackson, the purported name of the drawer of the check involved in this action, went to the plaintiff’s store in the guise of a prospective customer, examined a tray of rings, and indicated interest in a ring valued at $2,900. On leaving the store she inquired as to whether her check, if certified, would be accepted in payment for the ring and was advised that it would be accepted. On July 19, 1968, about 2 days later, she returned to the plaintiff’s store, delivered to the plaintiff’s president her check for $2,900, certified by the Banker’s Trust Company, the defendant, and the ring was thereupon delivered to her.
The check was then deposited by the plaintiff in its checking account and subsequently was returned to the plaintiff’s bank by the defendant bank with the advice that the check had been certified for only $29.
It appears that the drawer of the check had opened a checking account with the defendant in the name of Mrs. Carol A. Jackson on July 17, 1968, about the time of her initial visit to the plaintiff’s store. The total deposit in that account on July 19, 1968, was $47. On that day Mrs. Jackson certified two checks drawn by her, one for $29, which is the subject of this action, and one for $8, leaving a deposit of only $10 in her account with the defendant.
After certification the check was altered to read $2,900 by inserting the numerals “ 00 ” after the numeral amount and the word “ Hundred ” after the written amount. The check as altered was then delivered to the plaintiff in payment for the $2,900 ring.
The question here is whether the plaintiff or the defendant should suffer- the loss resulting from the alteration of the check.
Although the plaintiff proceeds on three separate causes of action, the underlying theory of its position is, in substance, *21 that the defendant was negligent when it certified the check. Negligence as the proximate cause of plaintiffs damage is predicated on the ground that the defendant’s “ suspicion should have been aroused ” by Mrs. Jackson’s conduct and on the fact that the check had been drawn in such a way that it was possible to insert two zero’s after the numeral “29” and the word “ hundred ” after the written “ twenty nine.”
The question of whether the defendant was negligent is determined by the scope of its duty when it certifies a check.
Two sections of the Uniform Commercial Code indicate the measure of that duty. Subdivision (1) of section 3-411 provides in part that “ Certification of a check is acceptance.” The contract of an acceptor is stated in subdivision (1) of section 3-413, which provides in part that “ The maker or acceptor engages that he will pay the instrument according to its tenor at the time of his engagement ”.
When the defendant bank certified the check of Mrs. Carol A. Jackson — the time of its engagement as acceptor — the amount for which the check was drawn was $29. Since subdivision (1) of section 3-413 provides that the acceptor engages to pay the instrument according to its tenor at the time of its engagement, the defendant’s obligation, it would seem, is to pay $29.
The plaintiff’s argument is based on two premises:
One is that the check was not complete when submitted to the bank for certification, and on that premise the plaintiff urges that sections 3-115, 3-406, and 3-407 of the Uniform Commercial Code, dealing with the problem of alteration, are applicable. The plaintiff’s point, as stated in its affidavit in opposition, is that ‘ ‘ when an incomplete instrument has been completed, he (the holder in due course) may enforce it as completed.”
One difficulty with this argument is that Mrs. Jackson’s check was legally complete when submitted to the defendant for certification. While it is true that the check was subsequently altered, it is nevertheless the fact that, at the time of certification, the check was a negotiable instrument containing all the requisite elements of a check as defined by section 3-104 of the Uniform Commercial Code, namely: signature by the drawer, an unconditional promise to pay a sum certain in money, “ a draft drawn on a bank and payable on demand”. That there were spaces on the check making alteration by a forger possible did not change its status or legal effect as a negotiable instrument complying fully with the statutory definition. . It should be noted in this connection that part of the ‘ ‘ Official Comment ’ ’ with regard to section 3-104 states that ‘ ‘ Any writing which *22 meets the requirements of subsection (1) and is not excluded under Section 3-103 is a negotiable instrument (McKinney’s Cons. Laws of N. Y., Book 62%, Part 2, p. 14.) In the fact situation presented here, it is my view that sections 3-115, 3-406 and 3 — 407 do not modify the applicability or the effect of sections 3-411 and subdivision (1) of section 3-413 with respect to the Jackson check as a completed instrument. Accordingly, “ completeness ” is not an issue, as argued by the plaintiff, requiring submission to a jury for its determination.
The second premise advanced by the plaintiff is that the rule stated in the line of cases of which Ultramares v. Touche (255 N. Y. 170) is the outstanding example, is applicable in this case.
The predicate in the Ultramares case is misrepresentation— misrepresentation, negligent or otherwise, that causes economic loss to a third party even though there be lack of privity between the injured party and the one making the misleading representation. That element is missing here. "When the bank certified the check it accurately represented a fact — the fact that the drawer of the check had sufficient funds on deposit to pay the amount certified. The subsequent alteration of the check by the drawer or the drawer’s accomplice did not convert into misrepresentation by the bank a representation,,that was truthful when made by the bank.
Rozny v. Marnul (43 Ill. 2d 54), decided by the Illinois Supreme Court on May 28, 1969, furnishes an interesting footnote to the development of the Ultramares doctrine in that the Illinois Court “ discarded ” “any remnants” of the privity concept. The basis of the cause of action there was an inaccurate survey subsequently relied on by a purchaser. The inaccuracy was not intentional. It was negligent. The point is that the critical fact that gave rise to the plaintiff’s claim was the misrepresentation. “Negligent” was the adjective that explained how the erroneous and misleading representation was made.
Nor is the character of the representation changed because certification is not obligatory. While subdivision (2) of section 3-411 of the Uniform Commercial Code provides, as plaintiff stresses, that “ unless otherwise agreed a bank has no obligation to certify a check ’ ’, the criterion, regardless of the motivation for certification, is whether the representation is or is not truthful at the time when it is made.
There is another critical distinction differentiating the present case from the Ultramares case and the line of associated cases, namely, that none of the cases cited by the plaintiff deals with *23 a negotiable instrument. Obviously the policy considerations relative to negotiable instruments are not necessarily identical with those affecting other business situations or transactions.
Here it should be observed that the facts that traditionally have been held to be represented by a bank when it certifies a check are (1) the genuineness of the drawer’s signature; (2) that the drawer has sufficient funds on deposit to pay the check; and (3) that the funds will not be permitted to be withdrawn to the prejudice of the holder of the check. (Continental Nat. Bank of N. Y. v. Trademen’s Nat. Bank of N. Y., 173 N. Y. 272; National Reserve Bank of City of N. Y. v. Corn Exch. Bank, 171 App. Div. 195, 196.) Certification “ did not impose upon ” the bank “ any further or greater responsibility” (Clews v. Bank of New York Banking Assn., 89 N. Y. 419).
In a carefully reasoned opinion involving consideration of both the Uniform Commercial Code and circumstances closely parallel to those in this case, the court in Sam Goody, Inc. v. Franklin Nat. Bank of Long Is. (57 Misc 2d 193) reaffirmed the traditional responsibilities assumed by a bank when it certifies a check and held that the defendant bank was liable only for the amount for which the check was originally drawn. There the court said (p. 195) that where the certification of the check is procured by the maker “ the bank does not incur the risk of an alteration prior to its acceptance, and only agrees to pay the instrument according to its tenor at the time of certification even as to a holder in due course (Uniform Commercial Code, § 3^413, subd. [1]).”
While the situation considered here is unfortunate, if banks are to be charged with the responsibility of studying checks prior to certification for the purpose of determining whether forgery after certification is possible, that duty, in view of past commercial practice and law should be effected by modification of the Uniform Commercial Code. In this connection the comment of Frederick A. Whitney, an acute observer and writer about commercial practices, is appropriate: “ The UCC applies to all drafts (including checks) the rule that the acceptance (certification) relates to the instrument as it was at the time of its acceptance and not to its original tenor. This view not only makes for the usefulness and currency of negotiable paper, hut is in accord with the principle that where the parties are equally innocent the law will leave the loss where they have placed it. Under the rule that a bank is liable on the certification only to the tenor of the instrutnent at the time it certified it, necessarily follows that the bank is not liable on a check *24 altered after certification.” (The Law of Modern Commercial Practices [2d ed.], p. 512.)
In the light of the stated circumstances and considerations it may be desirable, as a practical way of frustrating forgery after certification, to require that banks insert within their certifications the precise amount for which certification is made.
For the reasons stated, however, the defendant’s motion for summary judgment is granted to the extent of dismissing the complaint insofar as it seeks recovery in excess of $29 and partial summary judgment is granted in favor of the plaintiff for $29.